UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )  | |
| ) Criminal Case No. 2:22cr00013-001 | |
| v. ) | |
| ) **REPORT AND** | |
| **BILLY JUSTIN KING,** ) **RECOMMENDATION** | |
| Defendant ) | |

*I. Background*

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's written consent, this case was referred to the Honorable Pamela Meade Sargent, United States Magistrate Judge, to conduct a plea hearing.

*II. Facts*

The defendant has been charged in a four-count Information. On April 17, 2023, a plea hearing was conducted before the magistrate judge, and the defendant entered pleas of guilty to Counts One through Four of the Information, charging him with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), distribution of 5 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§

841(a)(1), 841(b)(1)(B), and use or possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

At this hearing, the defendant was placed under oath and testified that he is 33 years old and that he had completed high school and attended some college classes. The defendant testified that he reads and writes the English language. The defendant stated that his parents took him to various psychologists as a child, but they never followed through with consistent treatment. The defendant said that he did not know if he had ever been diagnosed with any mental health problem. He further testified that, after he was in state court custody, he was prescribed Remeron for complaints of a racing mind and inability to focus or sleep. He stated that he continues to take this medication, but he still experiences some symptoms. A competency evaluation was performed on the defendant prior to his guilty plea hearing. The only diagnoses given the defendant were Opiate Use Disorder and Stimulant Use Disorder.

The defendant testified that he had a long history of substance abuse. The defendant testified that, at the time of his arrest in July 2022, he was abusing and/or was addicted to, or had abused, heroin, cocaine, methamphetamine, marijuana, hallucinogens and ecstacy. The defendant stated that he had not used any of these substances since his arrest. The defendant admitted that he had used Suboxone while in custody, but he said that he had not used Suboxone since January 1, 2023. He also testified that he was not under the influence of any drug, medication or alcoholic beverage.

The defendant testified that his mental health complaints and symptoms and lack of treatment, as well as his substance abuse and lack of treatment, did not prevent him from understanding the nature or consequences of the court proceedings.

The defendant stated that he was fully aware of his right to grand jury indictment, that he had discussed that right with his counsel and that he wished to waive his right to grand jury indictment and consent to allow the Government's case against him to proceed on the four-count Information filed with the court. The defendant stated that, other than the terms of the Plea Agreement filed in this matter, no one had made any other promises to him or in any way had attempted to force him into waiving his grand jury indictment right. The undersigned accepted the defendant's waiver of his grand jury indictment rights, finding that the defendant was doing so knowingly and voluntarily.

The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant was advised in open court of the charges contained against him in the Information. He testified that he had fully discussed the charges, and his case in general, with his counsel. He also testified that he had read the Plea Agreement in its entirety, and he had discussed the Plea Agreement with his counsel before signing the Agreement. He stated that he understood the terms of the Plea Agreement and that the document presented to the court set forth his agreement with the Government in its entirety. The defendant specifically testified that he understood that, under the terms of the Agreement, he was waiving any right to directly appeal or collaterally attack his

conviction and sentence, insofar as he may legally do so.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises, other than those contained in the Plea Agreement with the Government, assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offenses with which he is charged are felonies and that, if his pleas are accepted, he will be adjudged guilty of the offenses and that this adjudication may deprive him of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess a firearm. The defendant further testified that he understood that three of the offenses with which he is charged are drug offenses and that, if his pleas to these charges are accepted, he will be adjudged guilty of the offenses and that this adjudication will make him ineligible for certain federal benefits including certain Social Security and food stamp benefits.

The defendant was informed of the possible maximum and mandatory minimum penalties provided by law for the offenses with which he is charged. In particular, the defendant stated that he understood that one of the drug offenses to which he was pleading guilty carried a mandatory minimum sentence of 10 years' imprisonment and that the firearms offense carried a mandatory minimum sentence of 5 years' imprisonment, which must be served consecutively to any other term of imprisonment. The defendant stated that he understood that he would receive a sentence of at least 15 years of imprisonment.

The defendant also was informed that, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the guideline sentence for his case until after a presentence report has been completed, and both parties have an opportunity to challenge the reported facts and the application of the Guidelines. The defendant stated that he understood that, after the applicable guideline range was determined, that the district judge has the authority in some circumstances to depart from the Guidelines and impose a sentence that is more severe or less severe than the sentence called for by the Guidelines. He stated that he understood that the Sentencing Guidelines were no longer mandatory, and after considering the Guidelines and the factors listed under 18 U.S.C. § 3553(a), the district judge may sentence outside of the Guidelines and up to the statutory maximum sentence. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney, the U.S. Attorney's Office or the U.S. Probation Office has given him. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison, he will not be released on parole and will serve his full term of imprisonment.

The defendant stated that he was stipulating that the following Sentencing Guidelines should apply to his case:

1. Section 2D1.1(c)(5) for a base Offense Level of 28 based on between 700 grams and 1 kilogram of heroin; and

    2.      Sections 2D1.1(c)(6) for a base Offense Level of 28 based on between 350 and 500 grams of methamphetamine.

The defendant also testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which would be waived or given up if his guilty pleas are accepted:

    i.      The right to plead not guilty to any offense charged against him;
    ii.     The right at trial to be presumed innocent and to force the Government to prove his guilt beyond a reasonable doubt;
    iii.    The right of assistance of counsel;
    iv.    The right to see, hear and cross-examine witnesses;
    v.     The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
    vi.    The right to decline to testify unless he voluntarily elected to do so in his own defense.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his current counsel. He stated that he had no complaints whatsoever regarding his attorney's representation. The defendant also testified that he understood the possible consequences of his pleas and asked the court to accept his pleas of guilty to Counts One through Four of the Information.

The Government presented the following evidence regarding the offenses with which the defendant is charged:

**As to Count One**:  Between May 12 and July 26, 2022, the

defendant, Billie McGuire, and others, knowingly and intentionally conspired to distribute and possess with intent to distribute 50 grams or more of methamphetamine in Lee County, Virginia.

The evidence would show that during the relevant period, the defendant and his wife, Billie McGuire, were selling significant quantities of "ice" methamphetamine to customers located in Lee County, Virginia, some of whom further distributed the methamphetamine to other customers in the district. The evidence would include three recorded, controlled purchases of methamphetamine from the defendant during the time of the charged conspiracy—one controlled purchase from the defendant of approximately one ounce of methamphetamine, and two controlled purchases from the defendant of approximately two ounces of methamphetamine, all within the Western District of Virginia. The evidence would show that Billie McGuire was present during two of the controlled purchases and that she answered the phone for the defendant to discuss the drug transactions and helped him coordinate and arrange the transactions as well as weigh out the drugs.

The evidence would show that the defendant had knowledge of the overall objectives and scope of the conspiracy and knowingly and voluntarily participated in it.

**As to Count Two:** The evidence would show that during the relevant period of May 12 to July 26, 2022, the defendant, Billie McGuire, and others knowingly and intentionally conspired to distribute and possess with the intent to distribute 100 grams or more

of a mixture or substance containing heroin in Lee County, Virginia.

The evidence would show that the defendant and McGuire were obtaining and selling significant quantities of heroin from and for sources based out of Detroit, Michigan. The defendant was obtaining four to six ounces of heroin approximately weekly from the Detroit sources, and then redistributing the heroin with the help of McGuire, to customers located in Lee County, Virginia, for a profit. This went on for approximately six to eight months. At times, the Detroit sources would come to Tennessee, and the defendant and McGuire would drive them around selling heroin to their own customers on behalf of the Detroit sources. The defendant and McGuire would typically sell an ounce of heroin for $1,800, allowing them to profit $200 per ounce after paying the Detroit sources for the drugs.

The evidence would show that the defendant had knowledge of the overall objectives and scope of the conspiracy and knowingly and voluntarily participated in it.

**As to Count Three:** The evidence would show that on July 26, 2022, the defendant knowingly and intentionally distributed 27.72 grams of methamphetamine, a Schedule II controlled substance, with a purity level of approximately 76 percent, to a confidential informant. The defendant sold the approximately 27 grams of methamphetamine to the informant for $400. The controlled buy and the phone conversations leading up to the controlled buy were recorded and took place in Jonesville, Virginia, which is within the Western District of Virginia.

**As to Count Four**:  The evidence would show that on June 2, 2022, which is within the time of the charged conspiracies, the defendant distributed approximately two ounces of suspected methamphetamine to a confidential informant for $800, at the Park and Ride in Jonesville, Virginia, which is within the Western District of Virginia.  The controlled buy was recorded.  Immediately after the drug transaction, the defendant can be seen clearly on the video in possession of four firearms—specifically a Smith & Wesson rifle, a 5.56 Eagle Arms rifle, a Kimber revolver, and a Rossi .22 caliber rifle. The defendant ultimately sold the four firearms to the informant for $2,200, and he also gave the informant a grenade launcher to pay for later. The informant can be heard on the recording asking the defendant if he was sure he wanted to sell all his guns and whether he had something to protect himself, his drugs, and his money, to which the defendant responded, "I've got a pocket pistol, a little .22 magnum." The evidence would show that multiple other people witnessed the defendant carrying a firearm during drug transactions, and that the defendant admitted in a post-arrest, post-Miranda interview that he has traded drugs for guns in the past.  The evidence also would show that the defendant knowingly possessed the firearms [mentioned on June 2] in furtherance of a drug trafficking crime for which he may be prosecuted in the United States—specifically, conspiracy to distribute and possess with intent to distribute methamphetamine.

After the Government presented its summary of this evidence, the defendant

stated that he agreed that the Government could present this evidence at trial, and he had no dispute or objection to the Government's summary of its evidence.

## PROPOSED FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering informed pleas;
2. The defendant is aware of the nature of the charges and the consequences of his pleas;
3. The defendant knowingly and voluntarily entered pleas of guilty to Counts One through Four of the Information; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned recommends that this court accept the defendant's pleas of guilty to Counts One through Four of the Information and adjudge him guilty of those offenses.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   This 17th day of April, 2023.

/s/   *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE